## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **JAMES WAGONER, JR. ET AL.** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NO. 09-7257** |
| | * | |
| **EXXON MOBIL CORPORATION ET AL.** | * | **SECTION "L" (3)** |

### ORDER & REASONS

Before the Court is a Motion for Summary Judgment (Rec. Doc. No. 101) filed by

Defendant Radiator Specialty Co. The Court has reviewed the submitted memoranda and the

applicable law. For the following reasons, the motion is granted in part and denied in part.

## I. BACKGROUND AND PRESENT MOTION

This case arises out of the death of James Wagoner, Jr. due to alleged deficiencies in the

testing, design, labeling, and distribution of products that contain benzene. In her Complaint,

Plaintiff Macie Wagoner, who filed suit on behalf of herself and as the legal representative of the

decedent, avers that as part of his work from the 1970s until 2008, the decedent frequently came

in contact with products containing benzene and that as a result, he was chronically exposed to

the toxic substance. Among the products that the decedent allegedly used is Liquid Wrench,

which is manufactured and distributed by Defendant Radiator Specialty Co. Plaintiff alleges that

as a result of chronic exposure to benzene, the decedent suffered from and eventually died of

multiple myeloma. In her Complaint, Plaintiff has asserted a number of claims against

Defendant, including ones alleging design and warning defects. In its Answer, Defendant has

denied liability.

Defendant has now filed a Motion for Summary Judgment (Rec. Doc. No. 101).

1

Defendant contends that all of Plaintiff's claims fail as a matter of law because they are preempted under the Federal Hazardous Substances Act (FHSA), 15 U.S.C. § 1261 *et seq.* Defendant argues that because Liquid Wrench is "intended, or packaged in a form suitable, for use in the household," *id.* §§ 1261(p), 1262(b), it falls within the regulatory scheme of the FHSA. That statute, Defendant notes, preempts any state-law claim that seeks to impose labeling requirements different from those prescribed by the FHSA. Defendant asserts that its Liquid Wrench label complies with the FHSA and that accordingly, Plaintiff's claims fail on the merits. Alternatively, Defendant states, to the extent that they seek to impose different labeling requirements, Plaintiff's claims are preempted.

Plaintiff opposes Defendant's motion. First, Plaintiff argues that there is a genuine issue of fact as to whether the Liquid Wrench product used by the decedent is "intended, or packaged in a form suitable, for use in the household." *Id.* Second, Plaintiff asserts that there is also a genuine issue of fact as to whether the Liquid Wrench product complied with the various labeling requirements of the FHSA. According to Plaintiff, the Liquid Wrench product does not warn of its "principal hazard[s]," does not describe "precautionary measures," does not specify "instructions for handling," does not provide "conspicuous[]" warnings, and contains statements that negate the warnings that do appear on the label. *Id.* § 1261(p)(1); 16 C.F.R. § 1500.122. Plaintiff asserts that in light of all of this, summary judgment as to her failure-to-warn claim is not appropriate at this juncture. Finally, Plaintiff argues that the FHSA does not reach the non-warning claims that she has asserted and that accordingly, Defendant's attempt to obtain summary judgment as to those claims should be rejected.

## II. LAW AND ANALYSIS

**A. Standard of Review**

A district court can grant a motion for summary judgment only when the "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**B. Preemption Under the FHSA**

**1. Overview of the FHSA**

Congress enacted the Federal Hazardous Substances Labeling Act in 1960 in order to "provide a nationally uniform requirement for adequate cautionary labeling of packages of

hazardous substances." H.R. Rep. 86-1861, at 1 (1960), *reprinted in* 1960 U.S.C.C.A.N. 2833, 2833. As enacted, the statute prohibited the "introduction into interstate commerce of any misbranded package of a hazardous substance." Pub. L. No. 86-613, § 4(a), 74 Stat. 372, 375 (codified at 15 U.S.C. § 1263(a)). The term "misbranded package of a hazardous substance" was defined as one that failed to comply with a number of labeling requirements. *See id.* § 2(p), 74 Stat. at 374 (codified at 15 U.S.C. § 1261(p)). The agency in charge of implementing the statute was authorized to promulgate "additional label requirements" if it found that the minimum label requirements were not adequate to protect public health and safety. *Id.* § (3)(b), 74 Stat. at 374 (codified at 15 U.S.C. § 1262(b)).

In 1966, Congress amended the statute. First, Congress added a new provision prohibiting the introduction into interstate commerce of "banned hazardous substance[s]." Pub. L. No. 89-756, § 3(b), 80 Stat. 1303, 1305 (codified at 15 U.S.C. § 1263(a)). The statute defined that term as including any substance that, despite complying with the statute's labeling requirements, presents such a hazard that public health "can be adequately served only by keeping such substance . . . out of the channels of interstate commerce." *Id.* § 3(a), 80 Stat. at 1304 (codified at 15 U.S.C. § 1261(q)(1)). Second, Congress added an express preemption clause, which declared that "it is the intent of the Congress to supersede any and all laws of the States and political subdivisions thereof insofar as they . . . provide for the precautionary labeling of [a hazardous substance] which differs from the requirements" of the statute. *Id.* § 4(a), 80 Stat. at 1305 (codified at 15 U.S.C. § 1261 note). Third, Congress deleted the word "Labeling" from the name of the statute, rendering it the FHSA. *Id.* § 5, 80 Stat. at 1305 (codified at 15 U.S.C. § 1261 note).

In 1976, Congress adopted additional changes to the FHSA. First, Congress restyled the existing express preemption clause. As amended, the provision states: "if a hazardous substance . . . is subject to a cautionary labeling requirement [under Section 2(p) or Section 3(b) of the act], no State . . . may establish or continue in effect a cautionary labeling requirement applicable to such substance . . . unless such cautionary labeling requirement is identical to the labeling requirements [under the act]." Pub. L. No. 94-284, § 17(a), 90 Stat. 503, 510 (codified at 15 U.S.C. § 1261 note (b)(1)(A)). Second, Congress added a separate express preemption clause regarding banned hazardous substances. That provision states that "if a requirement is established" with respect to a banned hazardous substance, "no State . . . may establish or continue in effect a requirement applicable to such substance . . . unless such requirement is identical to the requirement established [under the act]." *Id.*, 90 Stat. at 511 (codified at 15 U.S.C. § 1261 note (b)(1)(B)).

As noted above, Defendant contends that Plaintiff's claims are preempted under the FHSA. In particular, as Defendant does not argue that its Liquid Wrench product contains a banned hazardous substance, it has advanced the notion that the labeling preemption provision works to defeat Plaintiff's claims. Plaintiff has responded to Defendant's argument with three assertions. First, Plaintiff suggests that there is a genuine issue of fact as to whether the FHSA is applicable because the Liquid Wrench product was not "intended, or packaged in a form suitable, for use in the household." 15 U.S.C. §§ 1261(p), 1262(b). Second, Plaintiff contends that even if FHSA applies, there are genuine issues of fact as to whether the Liquid Wrench product complied with the statute's labeling requirements. And third, Plaintiff suggests that the FHSA does not reach her non-warning claims and that accordingly, summary judgment as those

claims is inappropriate.[1] The Court will discuss these issues in turn.

**2. The applicability of the FHSA**

The parties dispute whether there is a genuine issue of fact as to whether the Liquid Wrench product falls within the ambit of the FHSA and its labeling preemption clause. To resolve this question, the Court will turn to the text of the statute. The labeling preemption provision applies only "if a hazardous substance or its packaging is subject to a cautionary labeling requirement" under Section 2(p) or Section 3(b) of the act. *See id.* § 1261 note (b)(1)(A). As indicated above, Section 2(p) of the FHSA – in the course of defining the statutory term "misbranded hazardous substance" – specifies a number of labeling requirements, and it provides that these requirements apply only to "hazardous substance[s] . . . intended, or packaged in a form suitable, for use in the household." *Id.* § 1261(p). Similarly, Section 3(b) – which authorizes the Consumer Product Safety Commission (CPSC) to promulgate additional requirements if it finds that the requirements under Section 2(p) are inadequate – refers to "hazardous substance[s] intended, or packaged in a form suitable, for use in the household." *Id.* § 1262(b). The key question, therefore, is whether the Liquid Wrench product contains a "hazardous substance intended, or packaged in a form suitable, for use in the household."

By regulation, the CPSC has interpreted this statutory phrase as meaning "any hazardous substance . . . that under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house . . . or in or around any related building or shred

_____

[1] At this stage, neither party has raised the question of what state law applies to Plaintiff's claims against Defendant. The Court need not address this issue for the purpose of this motion. The Court does takes this opportunity, however, to note that as the case moves forward, this question will have to be conclusively resolved.

including . . . a garage." 16 C.F.R. § 1500.3(c)(10)(i). According to the regulation, "[t]he term includes articles . . . designed primarily for professional use but which are available in retail stores . . . for nonprofessional use." *Id.* "An article labeled as, and marketed solely for, industrial use does not become subject to [the FHSA] because of the possibility that an industrial worker may take a supply for his own use." *Id.* The key criterion under the regulation is "whether under any reasonably foreseeable condition of purchase, storage, or use the article may be found in or around a dwelling." *Id.*

In this case, Defendant has proffered evidence that it distributed the Liquid Wrench product that was used by the decedent to "hardware, auto ware stores, and other retail stores," Def.'s Ex. F (Rec. Doc. No. 101-8), and that accordingly, it is "reasonably foreseeable" that the product "may be brought into or around a house . . . or in or around any related building or shred including . . . a garage." 16 C.F.R. § 1500.3(c)(10)(i). In her opposition, Plaintiff has presented two responses to this argument. First, Plaintiff has indicated that the applicable test for determining whether a hazardous substance falls within the FHSA regulatory scheme is simply whether the manufacturer "intended [that the substance] be used for commercial, industrial, or other non-household uses." Second, according to Plaintiff, the product's label states that Liquid Wrench is "primarily for plumbers, mechanics and tradesmen."

Neither of these responses is availing. First, the interpretation of the FHSA that has been identified by Plaintiff appears in an opinion letter issued by the CPSC in October 1974. *See* Pl.'s Ex. 2 (Rec. Doc. No. 102-4). The Supreme Court has stated that "[i]nterpretations such as those in opinion letters . . . lack the force of law." *Christensen v. Harris County*, 529 U.S. 576, 587 (2000). Here, Plaintiff has not otherwise provided any explanation as to why the interpretation in

the opinion letter should dislodge that which appears in the formally promulgated regulation. For instance, Plaintiff has not argued that the interpretation in the regulation is an unreasonable interpretation of the FHSA and therefore unworthy of deference. *See Chevron U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 844 (1984).[2] Accordingly, the Court will adhere to the interpretation codified in the regulation.

Second, even if the product's label did say that Liquid Wrench is "primarily for plumbers, mechanics and tradesmen,"[3] that statement is of insufficient help to Plaintiff. Under the regulation, the FHSA encompasses products "designed primarily for professional use but which are available in retail stores . . . for nonprofessional use."16 C.F.R. § 1500.3(c)(10)(i). Only those products that are "labeled as, and marketed *solely* for, industrial use" fall outside of the FHSA. *Id.* (emphasis added). The key question, it bears repeating, is "whether under *any* reasonably foreseeable condition of purchase, storage, or use the article *may* be found in or around a dwelling" or a related structure. *Id.* (emphases added).

Here, Plaintiff has not controverted Defendant's statement that Liquid Wrench was sold in retail stores. Nor has Plaintiff pointed to any evidence to show that the Liquid Wrench product was "labeled as, and marketed *solely*, for industrial use." *Id.* (emphasis added). The mere fact that the Liquid Wrench product is "primarily for plumbers, mechanics and tradesmen" does not

---

[2] Under a provision enacted in 2008, the preemption clauses of the FHSA "may not be expanded or contracted in scope, or limited, modified or extended in application, by any rule or regulation . . . ." 15 U.S.C. § 2051 note. The Court is also not prepared at this time to hold that the regulation works to expand or modify the labeling preemption provision.

[3] The Court has reviewed the photographs submitted by the parties and is unable to find this particular phrase on any of the photographs. The photographs merely show the product as stating that it is "[i]ndispensable for mechanics, machinists, pipefitters and maintenance men." *E.g.*, Def.'s Ex. to Beaver Aff (Rec. Doc. No. 101-9).

make it unforeseeable that Liquid Wrench "may be brought into" dwellings and related structures, such as garages, especially if it was available in retail stores. *Id.* Plaintiff therefore has not proffered sufficient evidence to sustain the finding that Liquid Wrench is left entirely unregulated by the FHSA. The Court concludes that the FHSA's labeling preemption provision is applicable to this case.

**3. FHSA preemption as to Plaintiff's warning claims**

As noted above, the FHSA's labeling preemption provision states that "no State . . . may establish or continue in effect a cautionary labeling requirement applicable to [a hazardous substance] unless such cautionary labeling requirement is identical to the labeling requirement under [the FHSA]." 15 U.S.C. § 1261 note (b)(1)(A). In *Moss v. Parks Corp.*, 985 F.2d 736 (4th Cir. 1993), the Fourth Circuit explained that under this provision, "if the plaintiff requests a label that is 'more elaborate or different' than the one required by the FHSA and its regulations, [then] the claim is preempted." *Id.* at 740. However, "so long as a plaintiff charges a manufacturer with violations of FHSA-mandated labeling requirements and does not seek more stringent labeling requirements, the plaintiff's common law tort action for damages is not preempted." *Id.* at 740-41. This holding has been adopted by the Fifth Circuit. *See Comeaux v. Nat'l Tea Co.*, 81 F.3d 42, 44 (5th Cir. 1996) (adopting the Fourth Circuit's analysis in *Moss*).

Pointing to the Fifth Circuit's subsequent pronouncement that "[t]he FHSA does not authorize a private cause of action," *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 373 (5th Cir. 2002), Defendant has suggested that Plaintiff does not have a claim regarding whether its label complied with the requirements of the FHSA. This argument misapprehends the law. The Fifth Circuit's observation that the FHSA does not authorize a private cause of action

simply points to the fact that only the CPSC is empowered to enforce the FHSA *qua* the FHSA. *See generally* 15 U.S.C. 1264 (specifying the penalties that the CPSC may seek). That does not disturb the fact, however, that as the statute's preemption provision makes clear, a plaintiff may assert a state-law cause of action that adopts, as the applicable standard of care, compliance with the FHSA's labeling requirements. *See* 15 U.S.C. § 1261 note (b)(1)(A); *see also Mattis v. Carlon Elec. Prods.*, 295 F.3d 856, 862 (8th Cir. 2002); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001); *Moss*, 985 F.2d at 740-41.

Defendant also briefly alleges that Plaintiff's Complaint does not even assert a claim that the Liquid Wrench product does not comply with the FHSA standards. This argument cannot be taken seriously. It is axiomatic that courts "construe the complaint in the light most favorable to the plaintiff." *Herrman Holdings Ltd. v. Lucent Tech. Inc.*, 302 F.3d 552, 557 (5th Cir. 2002). In her Complaint, Plaintiff has alleged that Defendant has failed to "fully instruct and warn users" in the use of its product, to "fully warn foreseeable users . . . as additional medical knowledge became available," and to "refrain from negligently misrepresenting the safety and health risks" of its product. Clearly, these statements are sufficiently broad to be construed as asserting the claim that the Liquid Wrench product does not comply with the labeling standards of the FHSA. The fact that both parties have undertaken discovery on, and vigorously contested, this question demonstrates that Defendant has received "fair notice" of the claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

The inquiry therefore must continue. In particular, the Court must now determine whether there are genuine issues of fact as to whether the label of the Liquid Wrench product

complies with the requirements of the FHSA and its implementing regulations.[4] As noted above, Plaintiff has raised a number of arguments in this regard. First, Plaintiff contends that the label fails to warn of the product's "principal hazard[s]." 15 U.S.C. § 1261(p)(1)(E). Second, according to Plaintiff, the product does not describe "precautionary measures." *Id.* § 1261(p)(1)(F). Third, Plaintiff states that the product lacks "instructions for handling." *Id.* § 1261(p)(1)(I). Fourth, Plaintiff asserts that the information that Defendant has placed on the label is not shown "conspicuously." *Id.* § 1261(p)(1). Finally, Plaintiff avers that the warnings that do appear on the product are undermined by other statements that appear thereon. *See* 16 C.F.R. § 1500.122. The Court is unable to find merit in any of these arguments.

### a. Statement of principal hazards

First, Plaintiff contends that the Liquid Wrench label fails to warn of the "principal hazard[s]" of benzene. 15 U.S.C. § 1261(p)(1)(E). This argument is unavailing. By regulation, the CPSC has specified that the "statement of hazard" for products containing 5 percent or more by weight of benzene must be "Vapor harmful." 16 C.F.R. § 1500.14(b)(3)(i). The CPSC has

---

[4] In support of its motion, Defendant has offered photographs consistent with one another of a 16-ounce Liquid Wrench can, as well as evidence that the can that appears in the photographs is the same as the can that was used by the decedent. *See* Def.'s Ex. B (Rec. Doc. No. 101-4); Def.'s Ex. C (Rec. Doc. No. 101-5); Def.'s Ex. D (Rec. Doc. No. 101-6); Def.'s Ex. E (Rec. Doc. No. 101-7); Def.'s Ex. to Beaver Aff. (Rec. Doc. No. 101-9). In opposition to Defendant's motion, Plaintiff has suggested in passing that the photographs do not portray the product that the decedent used. This notion is difficult to take seriously. First, Plaintiff's own expert has relied on the same photographs to render his opinion in this case, *see* Pl.'s Ex. 1 (Rec. Doc. No. 102-3), and some of Plaintiff's own arguments about the can also rest on these photographs. Second, Plaintiff has not provided a different photograph of the product. By not doing so, and by complaining in passing about the photographs that have been proffered by Defendant, Plaintiff seems to have lost sight of the fact that the burden of proof at trial rests upon her and that once Defendant has made an initial showing in support of its motion for summary judgment, "the burden shifts to [her] to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom*, 47 F.3d at 1462.

also determined that "the additional statement of hazard" for products containing 10 percent or

more by weight of benzene is "Harmful or fatal if swallowed." *Id.* Both of these statements

appear on the product. Thus, there is no genuine dispute of fact that the product features the

statements of hazards that are required under the FHSA.

### b. Precautionary measures

Second, Plaintiff asserts that the product does not describe "precautionary measures." 15

U.S.C. § 1261(p)(1)(F). In particular, Plaintiff states that the product should specify that an

individual handling the product should avoid contact with skin and not breathe in the vapors

emitted by the product. The Liquid Wrench product contains these directives, however. The label

on the product states: "Avoid prolonged or repeated breathing of vapor and contact with skin."

Def.'s Ex. D (Rec. Doc. No. 101-6). It also specifies: "If contacted with skin, wash thoroughly."

*Id.* Finally, the product's label directs the user to "immediately move to fresh air" upon exposure

to the vapors. *Id.* Contrary to Plaintiff's suggestion, the product contains the "precautionary

measures" that she has identified.

### c. Instructions for handling

Third, Plaintiff briefly contends that the product fails to provide "instructions for

handling." 15 U.S.C. § 1261(p)(1)(I). This argument is also without merit. The FHSA requires

that a label contain "instructions for handling" only for those "packages which require special

care in handling." *Id.* Here, Plaintiff has not shown that the Liquid Wrench product is one that

requires "special care in handling" within the meaning of the statute. *Id.* Neither has she

suggested any specific instructions that would be appropriate. Plaintiff has thus failed to

articulate a basis upon which to find that the Liquid Wrench product does not comply with the

12

FHSA in this respect.

### d. Conspicuous warnings

Fourth, Plaintiff argues that the information that does appear on the label is not shown "conspicuously." *Id.* § 1261(p)(1). By regulation, the CPSC has further refined this requirement by setting forth detailed standards on type size, type style, and color contrast. *See* 16 C.F.R. § 1500.121(c)-(d). In her opposition, Plaintiff does not argue that the Liquid Wrench product does not meet these requirements. Rather, Plaintiff asserts that the information provided is not "conspicuous" because some of the information appear on the back of the product. This argument, however, confuses the requirement that the information must be provided "conspicuously," 15 U.S.C. § 1261(p)(1), with the separate requirement that the information must be displayed "prominently," *id.* § 1261(p)(2). While the conspicuousness requirement governs type size, type style, and color contrast, the prominence requirement concerns the placement of the requisite information. *See* 16 C.F.R. § 1500.121.

Here, the prominence requirement has been met. Indeed, contrary to Plaintiff's assumption, not all of the requisite information need to appear on the front of a container. The applicable regulations state that the requisite information "*may* appear on the principal display panel." *Id.* § 1500.121(b)(2)(i) (emphasis added). To be sure, the applicable "signal word" – such as the word "danger" – and the "statement of principal hazard(s)" must both appear on the principal display panel. *Id.* § 1500.121(b)(2)(ii). And where, as here, the additional word "poison" and the skull and crossbones symbol are required, *see id.* § 1500.14(b)(3)(i), they must also appear on the principal display panel, *id.* § 1500.121(b)(5)(i). The remaining information, however, may appear elsewhere so long as they are "placed together . . . on the container." *Id.* §

1500.121(b)(3). Here, all of these requirements are satisfied. Thus, Plaintiff's argument that

requisite information is improperly placed is without merit.

### e. Disclaimers

Finally, Plaintiff contends that the warnings that do appear on the product are

undermined by other statements that appear thereon. It is true that under the regulations, a label

may not feature "words, statements, designs, or other graphic materials that in any manner

negates or disclaims any of the label statements required by the act." *Id.* § 1500.122. But the

statements identified by Plaintiff in her opposition cannot be reasonably understood to violate

this requirement. Plaintiff asserts that the statement "[u]se only with adequate ventilation" has

the effect of undermining the warnings because it suggests that there is no risk of cancer and that

the product is harmful only if swallowed. If anything, however, the statement that the product

must be used "only" where there is "adequate ventilation" reinforces the product's hazard

statement – that vapor from the product alone is "harmful" to the body.

Plaintiff also suggests that the statement that Liquid Wrench is "indispensable for

mechanics, machinists, pipefitters and maintenance men in every field" has the effect of negating

or disclaiming the warnings on the product. This contention is also without merit. The statement

that the product is necessary to carry out certain types of work does not mean that the product is

not dangerous or that safety precautions are unnecessary. This statement thus cannot be

understood to negate the warnings that appear on the product. As the regulations indicate,

statements such as "Harmless" or "Safe around pets" are those that are prohibited. *Id.* §

1500.122. Neither of the statements identified by Plaintiff bears any resemblance to these

disclaimers. Plaintiff's contention that there are statements that negate the warnings mandated by

14

the FHSA is therefore without merit.

In sum, a careful review of the proffered evidence and of the FHSA and its implementing regulations demonstrates that the Liquid Wrench product complies with the labeling standards of the FHSA. Accordingly, to the extent that Plaintiff has asserted a state-law cause of action alleging noncompliance with those standards, that claim fails on the merits as a matter of law. To the extent that Plaintiff has alleged a state-law claim that seeks to impose different requirements than those under the FHSA, that is preempted under the express preemption provision of the statute. *See* 15 U.S.C. § 1261 note (b)(1)(A); *Comeaux*, 81 F.3d at 43-44; *Moss*, 985 F.2d at 740. Defendant is therefore entitled to summary judgment with respect to Plaintiff's failure-to-warn claims.[5]

### 4. FHSA preemption as to Plaintiff's non-warning claims

Defendant further argues that preemption under the FHSA extends not only to Plaintiff's failure-to-warn claims, but also to her remaining claims, such as ones that allege design defects. This contention may reflect two different assumptions: first, that the FHSA's labeling preemption provision is broad enough to encompass Plaintiff's remaining claims; and second, that implied preemption operates to preclude those claims. In its motion, Defendant has failed to clearly articulate the type of preemption that defeats Plaintiff's non-warning claims. It has, to be sure, invoked the FHSA's express labeling preemption provision. At the same time, however, it

---

[5] In light of the above, it is not necessary for this Court to address Defendant's arguments that Plaintiff's expert is not qualified to render an expert opinion and that the expert's opinion lacks the requisite reliability to be competent summary judgment evidence. Nor is it necessary to address Defendant's suggestion that whether a label complies with the FHSA is a question of law rather than one of fact. The Court will only note that this second argument may erroneously conflate two different ideas: one, that an issue is a question of law; and two, that a factual question can be decided as a matter of law.

has alluded to the idea that the FHSA may impliedly preempt Plaintiff's non-warning claims. The Court will address these possibilities in turn.

### a. Express preemption under the FHSA

Defendant's suggestion that the FHSA's labeling preemption provision is broad enough to encompass Plaintiff's non-warning claims is not persuasive. In construing the scope of an express preemption clause, a court must place its "focus on the plain wording of the clause, which necessarily contains the best evidence of Congress's preemptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). In fact, a court "need not go beyond that language to determine whether Congress intended . . . to preempt some state law." *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484 (1996). Neither the Fifth Circuit nor any other court of appeals appear to have had the opportunity to address whether the FHSA's labeling preemption provision precludes non-warning claims, but the answer is clear in light of the Supreme Court's decision in *Bates v. Dow Agrosciences LLC*, 544 U.S. 431 (2005).

In *Bates*, the Supreme Court considered the scope of the express preemption provision in the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), 7 U.S.C. § 136 *et seq.* In language that is "almost identical" to that of the FHSA, *Comeaux*, 81 F.3d at 43, the express preemption provision in FIFRA specifies that states "shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under [FIFRA]." *Bates*, 544 U.S. at 443 (quoting 7 U.S.C. § 136v(b)). The Supreme Court in *Bates* held that this provision does not preempt a variety of non-warning claims, such as ones that seek to "require manufacturers to design reasonably safe products, to use due care in conducting appropriate testing of their products, to market products free of manufacturing defects, and to

honor their express warranties or other contractual commitments." *Id.* at 444.

The Supreme Court provided two reasons for this holding. First, the Court observed that the language of the express preemption provision "plainly" did not reach these claims: "[n]one of these common-law rules requires that manufacturers label or package their products in any particular way." *Id.* Second, the Court explained that even if the language of the provision could reasonably be understood as extending to non-warning claims, the traditional presumption against preemption, which holds that Congress must make its intent to preempt state law "clear and manifest," requires that the narrower reading of the statute prevail. *Id.* at 449 (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). Thus, this reading of the statute "is at once the only one that makes sense of [the preemption provision] and the one favored by [the applicable] canons of interpretation." *Id.*

As noted above, the labeling preemption provision of the FHSA is "almost identical" to that of the FIFRA. *Comeaux*, 81 F.3d at 43; *accord Moss*, 985 F.2d at 740 n.3; *Chem. Specialties Mfg. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 945 (9th Cir. 1992). Indeed, both refer only to the labeling of products. *Compare* 15 U.S.C. § 1261 note (b)(1)(A) (FHSA), *with* 7 U.S.C. § 136v(b) (FIFRA). Given that the two preemption provisions are thus essentially the same, there is no reason to believe that the Supreme Court's analysis in *Bates* does not equally apply to the labeling preemption provision of the FHSA. In light of the plain language of that provision, and the traditional presumption against preemption, the Court therefore concludes that Plaintiff's remaining claims are not expressly preempted by the FHSA. *Accord Gougler v. Sirius Prods., Inc.*, 370 F. Supp.2d 1185, 1194-1199 (S.D. Ala. 2005) (holding that in light of *Bates*, the FHSA does not expressly preempt a design defect claim).

### b. Implied preemption under the FHSA

The Supreme Court has recognized several forms of implied preemption. "[A] federal statute implicitly overrides state law either when the scope of the statute indicates that Congress intended federal law to occupy a field exclusively . . . or when state law is in actual conflict with federal law." *Freighliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995). Conflict preemption, in turn, exists "where it is 'impossible for a private party to comply with both state and federal requirements,'" *id.* (quoting *English v. Gen. Elec. Co.*, 496 U.S. 72, 79 (1990)), "or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).

As in the context of express preemption, congressional intent is the "ultimate touchstone" in analyzing whether Congress has impliedly displaced state law. *Wyeth v. Levine*, 129 S. Ct. 1187, 1195 n.3 (2009) (quoting *Retail Clerks Int'l Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 375 U.S. 96, 103 (1963)). To ascertain the existence of implied preemption, courts review the statute's overall "structure and framework," *Sprietsma v. Mercury Marine*, 537 U.S. 51, 69 (2002), and the history of the legislative and regulatory scheme, all in light of the traditional presumption against preemption, *see Wyeth*, 129 S. Ct. at 1194-95. Neither the Fifth Circuit nor any other circuit seem to have had the opportunity to determine whether the FHSA impliedly preempts non-warning claims.[6] But a review the FHSA's history and its structure and framework indicates that Plaintiff's claims are not impliedly preempted.

---

[6] Only the Second and the Ninth Circuits have had the occasion to analyze the scope of implied preemption under the FHSA, but they did so with respect to state laws that sought to impose labeling requirements. *See Toy Mfrs. of Am., Inc. v. Blumenthal*, 986 F.2d 615, 624 (2d Cir. 1992); *Chem. Specialties Mfg. Ass'n, Inc. v. Allenby*, 958 F.2d 941, 950 (9th Cir. 1992).

### i. Field preemption

The Supreme Court has recognized that field preemption "may be inferred from a 'scheme of federal regulation . . . so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it,' or where an Act of Congress 'touch[es] a field in which the federal interest is so dominant that the federal system will be assumed to preclude an enforcement of state laws on the same subject.'" *English*, 496 U.S. at 79 (quoting *Rice*, 331 U.S. at 230). Here, Defendant does not contend that the regulation of product safety has traditionally been a federal concern. Such an argument cannot be reasonably be made, given the historical "prominence of the States in matters of public health and safety." *Medtronic*, 518 U.S. at 475.

Instead, Defendant has suggested that Congress has crafted a statutory scheme that signals its intent to occupy the field of regulating hazardous substances. The Court is not persuaded that Congress has done so. As noted above, Congress adopted the statute in 1960 in order to "provide a nationally uniform requirement for adequate cautionary labeling of packages of hazardous substances." H.R. Rep. 86-1861, at 1, *reprinted in* 1960 U.S.C.C.A.N. at 2833. The central object of the act, as it was originally enacted and as it stands today, is the labeling of hazardous substances. *Cf. Wis. Public Intervenor v. Mortier*, 501 U.S. 597, 613 (1991) (noting the FIFRA's "historic focus on labeling"). The statute contains various labeling requirements, *see* 15 U.S.C. § 1261(p), and it provides that these mandates may be supplemented with additional ones by regulation, *id.* § 1262(b).

To be sure, the FHSA also empowers the CPSC to designate items as "banned hazardous substances" if it finds that they pose a threat to public health even if they comply with the statute's labeling requirements. 15 U.S.C. § 1261(q)(1). And the statute prohibits the

introduction of these substances into interstate commerce. *Id.* § 1263(a). Pointing to these statutory provisions, Defendant contends that because the CPSC has the authority to ban benzene, the states lack the concurrent authority to regulate the substance. To further support its argument, Defendant could have added that when these provisions were enacted in 1966, Congress chose to delete the word "Labeling" from the name of the statute, thereby rendering it the FHSA. *See* Pub. L. No. 89-756, § 5, 80 Stat. at 1305. The very change in the name of the act, Defendant could have asserted, evinces Congress's intent to occupy the field of hazardous substance regulation.

Although this argument initially appears to have some force, it falters upon closer scrutiny. Indeed, the notion that Congress intended to occupy the field of regulating hazardous substances is undercut by the fact that the aforementioned provisions were simultaneously enacted with the "limited preemption provision" that is strictly focused on labeling. *Moss*, 985 F.2d at 739. By adopting that preemption provision, Congress made it clear that the FHSA "would not preclude States or localities from prohibiting altogether an article . . . which would not be banned under the Federal act if properly labeled." H.R. Rep. No. 89-2166, at 3 (1966), *reprinted in* 1966 U.S.C.C.A.N. 4095, 4097. Thus, the fact that the limited preemption provision on labeling was simultaneously enacted with those concerning banned hazardous substances demonstrates that Congress did not intend to oust the states from the field of hazardous substance regulation.

This conclusion is confirmed by the separate preemption provision that governs banned hazardous substances. As noted above, that provision states that "if a requirement is established" with respect to a banned hazardous substance, then the states may not "establish or continue in

20

effect a requirement applicable to such substance . . . unless such requirement is identical to the requirement established [under the act]." 15 U.S.C. § 1261 note (b)(1)(B). The plain language of this provision makes it clear that if the CPSC does *not* designate an item as a banned hazardous substance, then the states are free to regulate it as they wish. It is only when the CPSC does exercise its regulatory authority to ban hazardous substances, that the question of preemption arises. Even then, as the provision indicates, states may maintain their regulatory authority so long as they adopt the same requirements as those under federal law – that is, if they also ban the substance. *See id.*

Thus, a review of the FHSA as a whole highlights the fact that the statute simply "does not purport to establish a comprehensive federal scheme regulating hazardous substances." *Toy Mfrs. of Am., Inc. v. Blumenthal*, 986 F.2d 615, 617 (2d Cir. 1992). Instead, it adopts "a system of partial preemption." *Id.* at 618. The FHSA imposes two basic limitations on the authority of the states to regulate hazardous substances. First, states must maintain the same labeling standards as those that exist under federal law. Second, states must ban a hazardous substance if – but only if – the CPSC does so. Beyond these limitations, states are free to regulate hazardous substances as they wish. Given that the FHSA thereby "leaves substantial portions of the field vacant," *Mortier*, 501 U.S. at 613, Defendant's suggestion that Congress has ousted the states from the field of hazardous substance regulation is unconvincing.

### ii. Conflict preemption

Conflict preemption exists "where it is 'impossible for a private party to comply with both state and federal requirements,'" *Freighliner Corp.*, 514 U.S. at 287 (quoting *English*, 496 U.S. at 79), "or where state law 'stands as an obstacle to the accomplishment and execution of

the full purposes and objectives of Congress.'" *Id.* (quoting *Hines*, 312 U.S. at 67). Here, Defendant has not given any indication that impossibility preemption is at issue. Rather, Defendant has alluded to the idea that the congressional purpose behind the FHSA might be frustrated by allowing Plaintiff's non-warning claims to move forward.

In light of the analysis above, it is also clear that this contention is without merit. The central purpose of the FHSA is to ensure "uniform requirement[s] for adequate cautionary labeling of packages of hazardous substances." H.R. Rep. 86-1861, at 1, *reprinted in* 1960 U.S.C.C.A.N. at 2833. In the absence of a decision by the CPSC to ban a hazardous substance, *see* 15 U.S.C. § 1261(q)(1), the FHSA simply does not address questions regarding the proper testing, design, manufacturing, and distribution of products containing hazardous substances. Clearly, then, a finding of liability on Plaintiff's non-warning claims will not frustrate the purpose of the FHSA. The Court is therefore not persuaded that there is conflict preemption in this case.

**5. Summary**

The Court concludes that the FHSA applies to the labeling of Defendant's Liquid Wrench product and that there is no genuine issue of fact that the label on the product complies with the FHSA requirements. Thus, to the extent that Plaintiff's failure-to-warn claims allege that Defendant's label does not comply with the requirements of the FHSA, they fail on the merits as a matter of law. To the extent that Plaintiff's failure-to-warn claims seek to impose a labeling standard different than that of the FHSA, they are preempted under the labeling preemption clause of the FHSA. Accordingly, Defendant's motion for summary judgment as to Plaintiff's failure-to-warn claims must be granted.

The Court concludes, however, that the FHSA does not preempt Plaintiff's remaining claims, either expressly or impliedly. The FHSA's labeling preemption clause, by its own terms, does not reach beyond product labeling, and even if it could be reasonably understood to do so, the traditional presumption against preemption counsels in favor of adopting the narrower reading of the preemption clause. The FHSA also does not impliedly preempt Plaintiff's non-warning claims. When viewed as a whole, the FHSA clearly indicates that Congress did not intend to oust the states from the field of hazardous substance regulation and that its central purpose was to ensure the adequacy of product labels. Accordingly, Defendant's motion as to Plaintiff's non-warning claims must be denied.

## III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Radiator Specialty Co.'s Motion for Summary Judgment (Rec. Doc. No. 101) is hereby **GRANTED IN PART AND DENIED IN PART** as set forth above.

New Orleans, Louisiana, this 3rd day of June, 2011.

_____
UNITED STATES DISTRICT JUDGE